UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
UNITED STATES OF AMERICA,

                                 Case No. 16-CR-403 (GRB)

Plaintiff,

v.

JAIRO SAENZ,

Defendant.
--------------------------------------------------------X

### DEFENDANT'S REPLY IN SUPPORT OF MOTION TO SUPPRESS RESULTS OF TOWER DUMP ORDERS (DE 2540)

On May 3, 2024, Mr. Saenz moved to suppress the results of three "tower dump" orders permitting the government to obtain location data for Mr. Saenz (and thousands of others) without a search warrant. DE 2540. The government has filed a response in which it argues that (1) despite the government stating in sworn affidavits that numbers recovered from the tower dumps were those used by Saenz, Mr. Saenz does not have standing to challenge these searches; and (2) the good faith exception to the warrant requirement applies. DE 2583 at 15-23. Those are the two arguments designated by headings in the "Discussion" section of the government's response, but at various points, the government appears to contend that search warrants *still* are not required for the government to obtain tower dumps, even after *Carpenter v. United States*, 585 U.S. 296 (2018). With it not being clear on what arguments the government relies, Mr. Saenz will address all three.

### I.    MR. SAENZ HAS STANDING TO CHALLENGE THE SEARCHES.

The government's primary argument is that Mr. Saenz lacks standing to challenge the searches "because he has not submitted an affidavit from someone with personal knowledge establishing a privacy interest in any of the cellular telephones for which the government

obtained information pursuant to the SCA Orders." DE 2583 at 15-16. This argument is badly

misplaced because Mr. Saenz's use of the numbers at issue has never been disputed, and the

government itself has submitted multiple affidavits establishing Mr. Saenz's legitimate

expectation of privacy in phone numbers contained within the data recovered as the result of the

tower-dump orders.

The concept of "standing" in the Fourth Amendment context is really just "shorthand for

capturing the idea that a person must have a cognizable Fourth Amendment interest in the place

searched before seeking relief for an unconstitutional search; but it should not be confused with

Article III standing, which is jurisdictional and must be assessed before reaching the merits."

*Terrence Byrd v. United States*, 584 U.S. 395, 410-11 (2018). "A defendant can establish that

their Fourth Amendment rights were violated by showing they had a reasonable expectation of

privacy in the area searched or that the Government has physically intruded on constitutionally

protected areas to which they have a property entitlement." *United States v. Lewis*, 62 F.4th 733,

741 (2d Cir. 2023) (cleaned up).

The government does not dispute that phone numbers used by Mr. Saenz were contained

in the records obtained from the tower-dump orders. Rather, the government seeks to use

language from cases where standing was actually in dispute to defeat Mr. Saenz's motion without

the Court doing the Fourth Amendment analysis that will demonstrate the illegality of these

searches. After all, the government itself submitted multiple affidavits attesting that the following

numbers were used by Mr. Saenz: (631) 782-9290; (631) 839-6281. *See* Affidavit in Support of

an Application for Search Warrants, Jan. 9, 2017, ¶¶ 1, 8.c, 8.d (attached as Exhibit 1); Affidavit

in Support of an Application for Search Warrants, June 23, 2017, ¶¶ 1, 9 (attached as Exhibit 2).[1]

These are admissions by the government that these numbers were regularly used by Mr. Saenz,

and he therefore has a privacy interest in them. *See United States v. Ramirez*, 894 F.2d 565, 570

(2d Cir. 1990) ("An argument can be made that when the government advances a statement of its

agent in a judicial proceeding to obtain a search warrant, the government has adopted the content

of the statement, and a criminal defendant may introduce the statement as a party admission

under Fed. R. Evid. 801(d)(2)(B).") (citing *United States v. Morgan*, 581 F.2d 933, 938 (D.C. Cir.

1978) (holding that "where, as here, the government has indicated in a sworn affidavit to a

judicial officer that it believes particular statements are trustworthy, it may not sustain an

objection to the subsequent introduction of those statements on grounds that they are hearsay"));

*see also United States v. GAF Corp.*, 928 F.2d 1253, 1260 (2d Cir. 1991) (citing *Ramirez* for the

proposition that "this Court has recently suggested that affidavits filed in furtherance of an

application for the installation of an electronic monitor and a subsequent search may constitute

admissions of a party-opponent, and be used as such against the government by a criminal

defendant").

The cases on which the government relies for the proposition that standing had to be

established through an affidavit or testimony were situations where standing actually was at

issue. For instance, in *United States v. Ruggiero*, 824 F. Supp. 379, 391 (S.D.N.Y. 1993), *aff'd*

*sub nom. United States v. Aulicino, 44 F.3d 1102* (2d Cir. 1995), the relevant defendant had

merely been a passenger in one car that had been searched and had no connection whatsoever to

---

[1] A redacted copy of Exhibit 1 accompanies this public filing, and an unredacted copy is being filed under seal. Because only an unredacted version of Exhibit 2 was provided in discovery pursuant to Attorney Eyes Only restrictions, Exhibit 2 is being filed under seal in its entirety.

another car that had been search. In *United States v. Watson*, 404 F.3d 163, 166 (2d Cir. 2005),

the defendant was not the owner or resident of an address that had been searched. And it was

insufficient for the defendant to rely on the warrant's listing him "among those who 'utilized'"

the address, which the Second Circuit held "does not come close to showing that defendant

'owned the premises or that he occupied them and had dominion and control over them by leave

of the owner[.]'" *Id.* (citation omitted). In *United States v. Brown*, 627 F. Supp. 3d 206, 219

(E.D.N.Y. 2022), two of the defendants did not have standing where they provided no evidence

showing their expectation of privacy in GPS data from a rental car used in a shooting. In *United*

*States v. Loera*, 333 F. Supp. 3d 172, 179-80 (E.D.N.Y. 2018), *aff'd sub nom. United States v.*

*Guzman Loera*, 24 F.4th 144 (2d Cir. 2022), the defendant relied on an agent's affidavit, but the

affidavit did not suggest personal knowledge that the accounts searched were the defendant's.

Here, on the other hand, affidavits submitted by the government attest to multiple sources with

firsthand knowledge that the numbers at issue were Mr. Saenz's. That fact also makes this case

very different from *United States v. Dore*, 586 F. App'x 42, 46 (2d Cir. 2014) (summary order),

where the government's application for cell site location information (CSLI) was not a sworn

affidavit and did not even attest that the target phone numbers were used by Dore, but only that

they were "believed to be used by" Dore. *See* Application for an Order Authorizing the

Disclosure of Historical Cell Site Information, ¶¶ 2, 4.b, 4.c, 6, 7, *United States v. Dore*, No. 12-

CR-045, DE 86-2 (attached as Exhibit 3).

The government erroneously relies on an unpublished memorandum decision from the

Southern District of New York for the proposition that to have standing to challenge the

collection of CSLI, a defendant "must demonstrate that he owned or had exclusive use of the cell

phone during the period in question[.]" DE 2583 at 17 (quoting *United States v. (Kevin) Walker*,

16 Cr. 567 (JSR), ECF Dkt. No. 56, Mem. Op. at 4-5 (S.D.N.Y. Mar. 8, 2017).) This pre-

*Carpenter* ruling, however, is contrary to *Carpenter*. "Because 'an individual maintains a

legitimate expectation of privacy in the record of his physical movements as captured through

CSLI,' 'historical use of' the phone numbers, which produced the CSLI, necessarily satisfies the

standing requirement for an individual whose CSLI records have been seized." *United States v.*

*Ramirez*, 471 F. Supp. 3d 354, 361 (D. Mass. 2020) (citation omitted; quoting *Carpenter*, 585

U.S. at 310). Furthermore, this unpublished ruling is contrary to the weight of authority, which

recognizes that "[t]o establish a reasonable expectation of privacy sufficient to challenge the

search of a cell phone (or location information concerning a cell phone), courts have routinely

required a defendant to offer evidence demonstrating that he owned, possessed, or used the

phone." *United States v. Boyce*, No. 1:20-CR-217-JPB-CCB, 2021 WL 9217153, at \*6 (N.D. Ga.

Nov. 10, 2021) (collecting cases), *report and recommendation adopted*, No. CV 1:20-CR-00217-

JPB, 2022 WL 2438410 (N.D. Ga. July 5, 2022); *see also United States v. Johnson*, No. 2:12-

CR-92-FTM-29DNF, 2013 WL 3992249, at \*14 (M.D. Fla. Feb. 8, 2013) (person who used cell

phone 30% of the time and stored photographs and other information in the cell phone had

standing to challenge search), *report and recommendation adopted*, No. 2:12-CR-92-FTM-

29DNF, 2013 WL 3992254 (M.D. Fla. Aug. 2, 2013), *aff'd on other grounds sub nom. United*

*States v. Sparks*, 806 F.3d 1323 (11th Cir. 2015).[2] That the user of a phone has standing to

---

[2] In its parenthetical to the unpublished *(Kevin) Walker* decision, the government also relies on *(Kevin) Walker*'s expansion of case law holding that one has standing if he has the ability "to exclude others from dealing with the property," *United States v. Perea*, 986 F.2d 633, 640 (2d Cir. 1993), into a requirement that one's possession be *exclusive*. DE 2583 at 17 (quoting *(Kevin) Walker*, *supra*, at 4-5). That is not the law. *See, e.g., Minnesota v. Olson*, 495 U.S. 91, 99-100 (1990) ("The point is that hosts will more likely than not respect the privacy interests of their guests, who are entitled to a legitimate expectation of privacy despite the fact that they have no

challenge the gathering of data relating to that use flows by logic from *Katz v. United States*, 389

U.S. 347, 352 (1967), which was about calls from a public telephone booth.

For the government to base requests for warrants on sworn statements that certain phone

numbers were used by Mr. Saenz and then turn around and challenge his standing because he has

not himself submitted another sworn affidavit to that effect is blatant gamesmanship that defies

the logic behind the requirement of such an affidavit in appropriate cases. *See United States v.*

*Herron*, 2 F. Supp. 3d 391, 401 (E.D.N.Y. 2014) ("It would be improper to allow the Government

to gain access to historical cell-site data on sworn affirmation that Defendant possessed, used,

and acknowledged ownership of the phone, and yet maintain that Defendant does not have

standing to attempt to suppress it."), *aff'd*, 762 F. App'x 25 (2d Cir. 2019). The government's

challenge to standing in this case must be called out for the gamesmanship it so obviously is.

Furthermore, it does not appear the Second Circuit has ever adopted the purported

requirement of an affidavit to establish standing. Recently, the Second Circuit has held that to

obtain an evidentiary hearing, a defendant merely needs "to articulate specific facts regarding

[the location searched] and his use of it in order to respond to the Government's argument."

*United States v. Lewis*, 62 F.4th 733, 741 (2d Cir. 2023). This, the Second Circuit suggested, can

be done in "motion papers or during the motion hearing." *Id.*

---

legal interest in the premises and do not have the legal authority to determine who may or may
not enter the household. If the untrammeled power to admit and exclude were essential to Fourth
Amendment protection, an adult daughter temporarily living in the home of her parents would
have no legitimate expectation of privacy because her right to admit or exclude would be subject
to her parents' veto."); *United States v. Lewis*, 62 F.4th 733, 743 (2d Cir. 2023) (quoting *Olson*
for the proposition that the "untrammeled power to admit and exclude" is not "essential to Fourth
Amendment protection").

In any event, an affidavit is not the sole method of establishing standing. Rather, "[t]he law is clear that the burden on the defendant to establish standing is met only by sworn evidence, in the form of affidavit *or testimony*, from the defendant or someone with personal knowledge." *United States v. Montoya-Eschevarria*, 892 F. Supp. 104, 106 (S.D.N.Y. 1995) (emphasis added). In this case, at the motions hearing, Mr. Saenz can establish standing through his own testimony, or through the testimony of someone else with personal knowledge of his use of these phone numbers, such as the individuals identified in the warrant affidavits as Cooperating Defendant-1, Confidential Source-2, and Confidential Source-3. *See* Ex. 1, 2. Thus, the lack of an affidavit with the motion is not, as the government asserts, DE 2583 at 17, grounds to deny the motion without a hearing. *See*, *e.g.*, *Lewis*, 62 F.4th at 741 (defendant would be entitled to evidentiary hearing if he "pointed to any relevant evidence nor made any arguments pertinent to his reasonable expectation of privacy . . . in his motion papers"); *Montoya-Eschevarria*, 892 F. Supp. at 106; *(Kevin) Walker*, 16 Cr. 567, at 3 (at the conclusion of the first day of three-day hearing, the court ruled that to seek suppression of CSLI, defendants must submit affidavits establishing their privacy interests in the subject cell phones). As the government's warrant affidavits make clear, Mr. Saenz has standing to challenge these tower-dump orders. If there remains any question about his expectation of privacy, that will be resolved at the evidentiary hearing.

## II.    THE FOURTH AMENDMENT REQUIRES A SEARCH WARRANT ON PROBABLE CAUSE FOR THE GOVERNMENT TO OBTAIN TOWER DUMPS.

While the government does not address it in its Discussion section, the government does appear to make an argument that tower-dump orders issued on less than probable cause pursuant to the Stored Communications Act are still valid even after *Carpenter*. DE 2583 at 7-10, 22. But the government does not engage with any of the analysis laid out over more than 10 pages in Mr. Saenz's motion describing why *Carpenter* compels the conclusion that tower dumps require a

7

search warrant on probable cause. DE 2540-1 at 7-17. Instead, the government simply asserts

that the Supreme Court declined to conclude that obtaining tower dumps requires a warrant, and

the government cites some out-of-circuit cases. DE 2583 at 21. Mr. Saenz explicitly

acknowledged that the Supreme Court left open the question about tower dumps. DE 2540-1 at

7. And in no way does Mr. Saenz argue, as the government suggests, "that neither *Carpenter* nor

*Felder*[3] is binding." DE 2583 at 21. To the contrary, Mr. Saenz's argument—to which the

government has no response—is that the *rationale* of *Carpenter* applies with equal, if not

greater, force to tower dumps. DE 2583 at 7-17. And, as will be discussed, *infra* § III, *Felder*

simply did not address the issue currently before this Court.

The government relies on *United States v. Adkinson*, 916 F.3d 605, 611 (7th Cir. 2019);

*United States v. Green*, 981 F.3d 945, 958 (11th Cir. 2020); and *United States v. Trader*, 981 F.3d

961, 968 (11th Cir. 2020), DE 2583 at 21-22, but these cases merely acknowledged what Mr.

Saenz himself acknowledged—that the Supreme Court did not decide in *Carpenter* whether

tower dumps or real-time CSLI were covered by that decision. The government additionally

relies on *Matter of Search of Info. Associated with Cellular Tel. Towers Providing Serv. to

[Redacted] Stored at Premises Controlled by Verizon Wireless*, 616 F. Supp. 3d 1, 8 (D.D.C.

2022). DE 2583 at 22. But what the government fails to mention was that this was merely a

comment by the court in deciding whether to approve applications *for search warrants*. 616 F.

Supp. 3d at 8.

The government also relies on a decision from the Eastern District of North Carolina,

*United States v. (Charles) Walker*, 2:18-CR-37-FL-1, 2020 WL 4065980 (E.D.N.C. July 20,

---

[3] *United States v. Felder*, 993 F.3d 57 (2d Cir. 2021).

2020). DE 2583 at 22. This Court should decline to follow *(Charles) Walker* because it

erroneously relied on the fact that the tower-dump order in that case was *not* specific to an

individual over a long period of time, ignoring the serious Fourth Amendment concerns of the

dragnet nature of the order. *See (Charles) Walker*, 2020 WL 4065980, at * 8. The court also

determined that such an electronic dragnet is akin to "'conventional surveillance techniques' and

tools, such as security cameras and fingerprint collections, which capture data from every

individual who came into contact with the crime scene in the manner revealed by the technology

at issue." *Id.* But this ignores the intrusive and revealing nature of cell-phone information. *See*

DE 2540-1 at 8-15. Furthermore, *(Charles) Walker* did not address the property interests raised

by Mr. Saenz, *see* DE 2540-1 at 15-17, and neither does the government. On the point of whether

tower dumps require search warrants, this Court should follow the reasoning of *United States v.*

*Medina*, No. 21-CR-62-JJM-PAS, 2024 WL 246614 (D.R.I. Jan. 23, 2024) (ruling that tower

dumps require search warrants supported by probable cause[4]).

## III.   LAW ENFORCEMENT COULD NOT RELY IN GOOD FAITH ON ORDERS PERMITTING THEM TO GATHER INFORMATION ON TENS OF THOUSANDS OF INDIVIDUALS.

In his motion, Mr. Saenz acknowledged that the Second Circuit has held that the good-

faith exception applies to pre-*Carpenter* requests for CSLI relating to a particular individuals or

phones. DE 2540-1 at 21 (citing *Felder*, 993 F.3d at 74-77). In its argument to apply the good-

faith exception, the government primarily relies on holdings standing for the same proposition.

DE 2583 at 12-13, 20-21. But the government barely addresses the important different issue

raised in Mr. Saenz's motion—that the searches upheld in *Felder* and the other cases relied on by

---

[4] While *Medina* found that the good-faith exception applied, for the reasons discussed, *infra* § III, this Court should not follow that aspect of *Medina*.

the government were for CSLI for specific phones, not for information of thousands of individuals. DE 2540-1 at 20.

The government first goes through various pre-*Carpenter* decisions to say that as of February 2017, the various circuits had held that orders under § 2703(d) for CSLI were sufficient. DE 2583 at 8-9. But each of these decisions was in the context of CSLI for an individual, not a dragnet for personal information of thousands of people. *See United States v. Thompson*, 866 F.3d 1149, 1153 (10th Cir. 2017) (request under SCA for CSLI of specified target phones), *cert. granted, judgment vacated*, 138 S. Ct. 2706 (2018); *United States v. Graham*, 824 F.3d 421, 424 (4th Cir. 2016) (government obtained CSLI from defendants' cell phone provider to place them in the vicinity of armed robberies); *United States v. Carpenter*, 819 F.3d 880, 884 (6th Cir. 2016) (government applied for order for records, including CSLI, for 16 different phone numbers), *rev'd and remanded*, 585 U.S. 296 (2018); *United States v. Davis*, 785 F.3d 498, 502 (11th Cir. 2015) (government applied for order directing various phone companies to disclose stored telephone communications records for four subject telephone numbers); *In re U.S. for Hist. Cell Site Data*, 724 F.3d 600, 602 (5th Cir. 2013) (addressing three applications for orders for CSLI and other subscriber information for a particular phone in each application); *United States v. Guerrero*, 768 F.3d 351, 358 (5th Cir. 2014) (holding that orders to obtain CSLI "for *specified cell phones* at the points at which the user places and terminates a call are not categorically unconstitutional" (emphasis added)); *In re Application of U.S. for an Ord. Directing a Provider of Elec. Commc'n Serv. to Disclose Recs. to Gov't*, 620 F.3d 304, 305 (3d Cir. 2010) (order to produce "a customer's" CSLI).

Notably, key to the Third Circuit's ruling in *Elec. Commc'n Serv.* was the determination that CSLI cannot be used to approximate the past location of a person. *Id.* at 312. But the court

10

recognized that if CSLI were to be used for such purposes, then a warrant would likely be required. *Id.* ("We cannot reject the hypothesis that CSLI may, under certain circumstances, be used to approximate the past location of a person. If it can be used to allow the inference of present, or even future, location, in this respect CSLI may resemble a tracking device which provides information as to the actual whereabouts of the subject."). The Third Circuit also rejected the government's argument that there was no privacy interest in CSLI because it had been shared with a third party, holding: "A cell phone customer has not 'voluntarily' shared his location information with a cellular provider in any meaningful way." *Id.* at 317.

The government also cites a number of post-*Carpenter* cases from the Second Circuit to argue that "the Second Circuit has repeatedly found that, where law enforcement obtained CSLI pursuant to process issued under the SCA prior to *Carpenter*, under the good faith exception, a defendant is not entitled to have the records suppressed." DE 2583 at 12. But none of the Second Circuit cases relied on by the government (most of which are not binding precedent) addressed tower dumps. Rather, each is about CSLI for individuals. *See United States v. Canada*, 858 F. App'x 436, 439 (2d Cir. 2021) (summary order) (government obtained "Rodriguez's cell site records"); *United States v. Miller*, 807 F. App'x 90, 96 (2d Cir. 2020) (summary order) ("The government obtained and presented to the jury three days of cell-site location information for Mack's cellphone."); *Felder*, 993 F.3d at 74 (government obtained CSLI "for certain cell phones subscribed to by Felder and other conspirators"); *United States v. Herron*, 762 F. App'x 25, 30 (2d Cir. 2019) (summary order) (government obtained CSLI for Herron's phone); *United States v. Chambers*, 751 F. App'x 44, 47 n.2 (2d Cir. 2018) (summary order) (order to obtain CSLI for two phones associated with Chambers); *United States v. Zodhiates*, 901 F.3d 137, 141 (2d Cir. 2018) (subpoenas for records pertaining to two cell phones).

The out-of-circuit appellate decisions on which the government relies also addressed CSLI for a particular individual or individuals rather than the broad sweep accomplished by the tower dumps at issue here. *See United States v. Chavez*, 894 F.3d 593, 608 (4th Cir. 2018) ("the government obtained from T-Mobile cell site tracking data associated with Chavez's cell phone through a court order issued under the Stored Communications Act"); *United States v. Joyner*, 899 F.3d 1199, 1204 (11th Cir. 2018) (government obtained records for the two defendants); *United States v. Curtis*, 901 F.3d 846, 848 (7th Cir. 2018) ("The government relied on the procedures set forth in the Stored Communications Act (SCA), 18 U.S.C. § 2703, to obtain Curtis's CSLI."); *United States v. Carpenter*, 926 F.3d 313, 315 (6th Cir.) ("During its investigation, the Government sought court orders under § 2703(d) for Carpenter's CSLI."), *on reh'g*, 788 F. App'x 364 (6th Cir. 2019); *United States v. Goldstein*, 914 F.3d 200, 202 (3d Cir. 2019) ("Hoping to find evidence placing Goldstein at the scene of the kidnapping, the prosecutors obtained a court order under the Stored Communications Act (SCA) . . . compelling Goldstein's cell phone carrier to turn over 57 days' worth of his CSLI."); *United States v. Korte*, 918 F.3d 750, 753 (9th Cir. 2019) ("the Government obtained a court order under the Stored Communications Act ("SCA"), 18 U.S.C. § 2703(d), to acquire Korte's CSLI").[5]

The government additionally relies on two district court cases, *United States v. Tartaglione*, No. 16-CR-832 (KMK), 2023 WL 2237903 (S.D.N.Y. Feb. 27, 2023); and *United*

---

[5] Without explanatory parenthetical, the government also cites *United States v. Ackies*, 918 F.3d 190, 202-03 (1st Cir. 2019). DE 2583 at 21. But *Ackies* addressed precise location information *warrants* issued on a finding of probable cause. 918 F.3d at 198-203. The only discussion of *Carpenter* was whether that case held that a cell phone constitutes a "tracking device" under 18 U.S.C. § 3117. 918 F.3d at 199-200. The good-faith issue was about compliance with Rule 41(b)'s geographical limitations. 918 F.3d at 202-03.

*States v. Williams*[6], No. 10-CR-622 (ADS), 2018 WL 4623017 (E.D.N.Y. Sept. 26, 2018). DE

2583 at 22-23. *Tartaglione* did address an SCA order for tower-dump records. But the court

simply relied on *Zodhiates* and *Felder* and never addressed the factual and legal distinctions

between an order under the SCA for records specific to an individual and tower-dump records

that provide information on thousands of individuals. *Id.* at *12-13.[7] For *Williams*, the posture of

the case is important. The ineffective-assistance/suppression issue was raised in a motion for

reconsideration of the denial of a motion for new trial under Rule 33. 2018 WL 4623017, at *3.

The court first denied the motion because there is no provision in the Federal Rules of Criminal

Procedure for reconsideration of a post-judgment motion that was previously denied. *Id.* The

court next denied the motion as untimely. *Id.* Only then did the court turn to the merits of the

motion, conducting its analysis in light of the "'heavy burden' imposed on a Defendant who is

'challenging the sufficiency of evidence supporting a conviction.'" *Id.* (quoting *United States v.*

*Autuori*, 212 F.3d 105, 114 (2d Cir. 2000)). Even then, the court first noted that the motion for a

new trial was "an inappropriate vessel to address ineffective assistance of counsel." *Id.* Then,

conducting the highly deferential ineffective-assistance analysis, the court looked mainly to

*Zodhiates* and never analyzed the key factual distinction between a tower dump and targeted

CSLI. *Id.* at 4-5.[8]

   In his motion, Mr. Saenz discussed the breadth and lack of particularity inherent in these

tower-dump orders and that, by analogy, no reasonably officer could have thought it

---

[6] The government's responses mistakenly titles the case *Wilson*. DE 2583 at 22.

[7] Tartaglione was sentenced on June 10, 2024, so the Second Circuit has not yet had the
opportunity to address this ruling.

[8] Williams does not appear to have raised this issue on appeal. *See United States v. Walker*, 830 F.
App'x 12 (2d Cir. 2020).

constitutional to conduct a search of every home in a ten-block radius of a murder. DE 2540-1 at 17-19, 20. The government does not respond to these arguments. And no case on which the government relies squarely addressed the breadth of tower-dump orders like those at issue here. Because of the nature of the orders at issue here, this Court should hold that the good-faith exception does not apply.

## IV.    CONCLUSION

For the reasons stated in Mr. Saenz's motion, DE 2540, and herein, the Court should suppress the results of the tower-dump searches and the fruits of any such searches.

Respectfully submitted this 24th day of June 2024,

s/Jacqueline K. Walsh
Jacqueline K. Walsh
Washington State Bar #21651
140 Lakeside Ave., #A-338
Seattle, WA 98122
(206) 325-7900
jackie@jamlegal.com

s/Eric K. Klein
Eric K. Klein
Colorado Atty. Reg. #42185
Johnson & Klein, PLLC
5398 Manhattan Circle
Boulder, CO 80303
(303) 444-1885
eklein@johnsonklein.com

Attorneys for Jairo Saenz

/Monica Foster
Monica Foster
Indiana State Bar #8368-49
Executive Director
Indiana Federal Community Defenders, LLC
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
(317) 383-3520
Monica.foster@fd.org

<u>CERTIFICATE OF SERVICE</u>

I certify a copy of the foregoing was filed electronically this 24th day of June 2024.

Notice of this filing will be sent to the parties of record by operation of the Court's electronic

filing system. Parties may access this filing through the Court's system.


                    s/ Monica Foster
                    Monica Foster