UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA,

                                         Case No. 16-CR-403 (GRB)

Plaintiff,

v.

JAIRO SAENZ,

Defendant.
-------------------------------------------------------X

**DEFENDANT JAIRO SAENZ'S REPLY IN SUPPORT OF MOTION TO
SUPPRESS RESULTS OF CELLULAR-RECORDS SEARCH (SEARCH WARRANT
DATED JANUARY 9, 2017) (DE 2541)**

## I.    INTRODUCTION

        Mr. Saenz has moved to suppress the results of a search warrant for cellular records dated

January 9, 2017. DE 2541. By separate motion, he moved to suppress the results of a search

warrant for cellular records dated June 23, 2017. DE 2545. By a third motion, he moved to

suppress the results of a warrant to search cellular phones recovered from Mr. Saenz's home. DE

2555. Although addressing the warrants in this manner may have resulted in some redundant

arguments because of the applicable law and similarities between the warrants and affidavits,

counsel for Mr. Saenz determined this was the best approach because each warrant and the

affidavit in support thereof must stand on its own. To address all three warrants together could

result in conflation of the evidence supporting each. The government chose to respond to these

three motions in a single filing. DE 2606. And that did tend to result in a conflation of or

confusion about the information supporting each warrant. Therefore, Mr. Saenz is filing separate

replies regarding each motion. Counsel will endeavor to reduce redundancy by cross-referencing

arguments made elsewhere unless doing so would create unnecessary work for the Court.

As a preliminary matter, the government has stated that it will not seek to introduce at trial any evidence obtained relating to J. Saenz Phone #2 ((631) 839-6281). DE 2606 at 9, 32.[1] Accordingly, Mr. Saenz will limit this reply to arguments impacting the search for records relating to J. Saenz Phone #1 ((631) 782-9290).[2]

## II.  MR. SAENZ HAS STANDING TO CHALLENGE THE SEARCH.

The government first argues that Mr. Saenz lacks standing to challenge any of the searches "because he has not submitted an affidavit from someone with personal knowledge establishing a privacy interest in," *inter alia*, J. Saenz Phone #1. DE 2606 at 21. Mr. Saenz has previously addressed a virtually identical argument by the government. DE 2616 at 1-7. Mr. Saenz adopts and incorporates those arguments as if fully set forth herein.

That the government raises a standing challenge regarding J. Saenz Phone #1 is rather astounding since the government is well aware from the documents produced in response to the warrant that the subscriber information for J. Saenz Phone #1 demonstrates that it was subscribed to Jairo Saenz at his home address:

| Subscriber Name | JAIRO SAENZ COREAS |
|---|---|
| Subscriber Address | 1619 SPUR DR N CENTRAL ISLIP |
| Subscriber Status | A |
| Subscriber Name Effective Date | 09/02/2016 |

---

[1] Page citations for DE 2606 are to the ECF page numbers.
[2] Elsewhere in its response, the government does indicate that it intends "to offer the information obtained for J. Saenz Phones" in the plural. DE 2606 at 14. Mr. Saenz assumes this to be a mere mistake and thus relies on the government's multiple, specific statements that it will not seek to introduce evidence from records for J. Saenz Phone #2.

(Subscriber information provided on March 22, 2017, attached as Exhibit 1.) As the subscriber, Mr. Saenz has both a privacy and a property interest in the records. The government's argument that Mr. Saenz does not have standing to challenge the search of records *in his name* is nothing but gamesmanship. If there remains any question about Mr. Saenz's expectation of privacy, that will be resolved at the evidentiary hearing.

## III.   THE GOVERNMENT FAILS TO DEMONSTRATE THAT THE AFFIDAVIT ESTABLISHED PROBABLE CAUSE TO SEARCH J. SAENZ PHONE #1.

### A.   The government fails to show how the affidavit established a sufficient nexus between J. Saenz Phone #1 and a crime for which evidence may have been recovered.

The government does not dispute that the only information tying J. Saenz Phone #1 to any crime is the double hearsay in which the affiant says that Cooperating Defendant-2 said that Gomez said he had been on a call with Mr. Saenz and at least four others before the Cuevas/Mickens murders and that phone records—obtained without a warrant—showed a three-way call that included J. Saenz Phone #1 shortly before those murders. *See* DE 2541-1 at 11; DE 2606 at 35-36.[3] And the government does not dispute that nothing in the affidavit states that the call was connected to the murders, that Jairo Saenz was connected with the murders, or that Jairo Saenz used a phone to aid or assist with the murders. Instead, the government argues for an inferential leap that "[t]he only reasonable inference, particularly given the duration of the call, is that the Attackers called the defendant and the other MS-13 members to discuss the fact that they

---

[3] The government somewhat conflates the question of the reliability of the information in the affidavit with the question whether the information in the affidavit provides a sufficient nexus to the place to be searched. *See* DE 2606 at 32-37. While the lack of information demonstrating the reliability of the information is certainly relevant, Mr. Saenz does not ground his nexus argument on the affidavit's failure to demonstrate the reliability of the informants on which it relies. *See* DE 2541-1 at 10-12.

spotted the victims, the plan to kill the victims, and where to go after murdering them – the defendant's house (which can be easily surmised by the fact that the Attackers went directly to his house afterwards)." DE 2606 at 36. But there is no *evidence* in the affidavit to support these inferences. If the call that is reflected in the records really was about the homicides, it would have been very easy to say that Cooperating Defendant-2 said that Gomez told him he was on the phone with, *inter alia*, Mr. Saenz and Alexi Saenz *to talk about the murders*. The affidavit, however, said nothing of the sort. And without that information there is an insufficient connection between the records for J. Saenz Phone #1 and the crimes for which evidence was sought.

> **B.  The government fails to explain how the affidavit demonstrated the reliability of the informants on which it relies.**

In his motion, Mr. Saenz explained how the affidavit relies on the word of informants whose credibility and reliability was never established through any kind of information allowing the magistrate to make an independent judgment but instead simply relied on two footnotes vouching for them without any specifics. DE 2541-1 at 13-18. The government chooses not to address this head-on, never even mentioning the footnotes in which the affiant attempts to vouch for the informants. Rather than respond directly to the lack of information demonstrating the credibility and reliability of the informants, the government suggests that the totality-of-the-circumstances adopted in *Illinois v. Gates*, 462 U.S. 213, 238 (1983), means that courts should take a gestalt approach to warrant affidavits rather than determine that the actual information in the affidavit is credible, reliable, and establishes probable cause. DE 2606 at 32-39.

Mr. Saenz never argued that the reviewing magistrate needed to determine if each piece of evidence itself established probable cause. But the magistrate did need to evaluate whether each piece of information was sufficiently credible and reliable so that he could determine if

probable cause to search the records of J. Saenz Phone #1 existed when the totality of the evidence was considered.

The government at first seems to concede that the only information even connecting the phone number designated J. Saenz Phone #1 to Jairo Saenz was the purported statements of two confidential sources. *See* DE 2606 at 39. The government argues that "J. Saenz Phone-1 was linked to the defendant by two separate and independent sources of information, Confidential Source-2 and Confidential Source-3." *Id.* Notably, however, while the government spends a significant amount of time trying to shore up the credibility of Cooperating Defendant-2, the government never makes even the slightest effort to demonstrate that either of these informants has proven to be credible or reliable. The most the government can assert is that these were purportedly "separate and independent sources of information[.]" DE 2606 at 39. This assertion has a fatal flaw, however—nothing in the affidavit says these were separate and independent sources of information. The only information about these two informants is in footnote 2 of the affidavit, which says nothing about whether they knew each other or had shared information. DE 2541-3 at 4. This is a crucial shortcoming of the affidavit, because without reliable information connecting the phone number identified as J. Saenz Phone #1 to Jairo Saenz *and* to the crimes for which probable cause is alleged, there cannot be probable cause to search records of that number.

Turning to the government's reliance on unnamed informants to establish other aspects of probable cause, the government's response demonstrates the importance of these informants, especially Cooperating Defendant-2. To support the reliability of the cooperators, the government makes the same speculative leap, repeatedly arguing that the cooperators provided information "independent" of one another or that they "independently" corroborated each other. *See* DE 2602 at 13, 39, 47, 54, 55, 56. But, again, there is no information in the affidavit

establishing that anything any of these cooperators provided was in fact independent of anything any other cooperator provided. For all the reviewing magistrate could have known, these cooperators had all been cellmates with plenty of opportunity to provide each other information and cook up a story. After all, according to the affidavit, they all had either pleaded guilty or were scheduled to shortly. DE 2541-3 at 3-4. It would thus seem there would be plenty of opportunity for collusion.

By its repeated insistence that the cooperators' information was independent of one another, the government demonstrates the importance of this assumption to a finding of probable cause. But that is all it is, an assumption that has no basis in *evidence* presented within the four corners of the affidavit. In a footnote, the government argues that "[t]he defendant invites the court to speculate that the cooperating defendants somehow colluded with each other to come up with consistent versions before meeting with the government. The defendant provides no evidence or even a good faith basis to support this allegation, which should be disregarded." DE 2606 at 54 n.11. But it is the government who invites the speculation of independence. The defendant has no burden to establish whether the cooperators colluded or whether they were independent. Rather, the burden was on the government's affiant to establish the credibility of these informants, and, as demonstrated by the government's arguments, whether they independently provided information is central to that determination. Without the purported independence of information, there is really just a footnote vouching for the cooperators with nothing on which the magistrate could make his or her own judgment. And that footnote, which discusses the cooperators legal status does open the possibility of collusion. But again, it is not the defense's burden to show that collusion actually happened; the government had the burden to

6

show that the cooperators' accounts were reliable, which, as the government makes clear, rose or fell on a demonstration of their independence.

The government argues that Cooperating Defendant-2 could be relied on to find probable cause that evidence would be found in the records of J. Saenz Phone #1 because Cooperating Defendant-2 got some things right about the murders of Cuevas and Mickens, such as the nature of the injuries they suffered, which were "consistent with the type of injuries caused by a machete and baseball bats, as described by Cooperating Defendant-2." DE 2606 at 37-38. First, this in no way demonstrates that Cooperating Defendant-2 had any sort of first- or even second-hand knowledge of what happened, since it had long been widely reported that both Cuevas and Mickens had been beaten and had wounds consistent with cutting. *See*, *e.g.*, *Reward doubled as community mourns teens viciously murdered in Brentwood*, abc7 Eyewitness News, Sept. 17, 2016[4]; *Murders of 2 teens in Brentwood remain a mystery*, abc7 Eyewitness News, Sept. 16, 2016[5]; *2 Long Island teens found dead in possible gang attack*, 6abc Action News, Sept. 15, 2016.[6] Second, this does nothing to advance probable cause to search records of J. Saenz Phone #1. As Mr. Saenz discussed in his motion, the Second Circuit has been clear that for an informant without a proven track record (as here) to be credited, the informant's assertions must be corroborated *in material respects* by independent evidence. DE 2541-1 at 15-16 (discussing *United States v. Wagner*, 989 F.2d 69, 72-73 (2d Cir. 1993)). Here, the information attributed to

---

[4] https://abc7ny.com/murder-teens-brentwood-vigil/1514819/
[5] https://abc7ny.com/suffolk-police-dead-woman-found-brentwood-stahley-street-long-island/1512696/
[6] https://6abc.com/suffolk-police-dead-woman-found-brentwood-stahley-street-long-island/1512879/

Cooperating Defendant-2—nor any other informant on whom the affidavit relies—is not corroborated in material respects by independent evidence.

Notably, the government does not dispute that nothing provided by any of the informants was in any way predictive. *See* DE 2541 at 16.

The government also does not overcome the fact that what Cooperating Defendant-2 claimed about the crucial call is inconsistent with the independent evidence. In his motion, Mr. Saenz discussed the fact that Cooperating Defendant-2 said Gomez described a call that had to have been at least a four-way call, but records demonstrated only a three-way call. DE 2541-1 at 15. In response, the government accuses the defense of relying on "idle speculation and unreasonable inferences in support of his argument." DE 2606 at 36. The government then argues that the defense argument does not account for participants on the call "through the use of the speaker phone function." *Id.* at 36-37. It is this government argument that constitutes rank speculation. There is no evidence in the four corners of the affidavit that any participant on the call was on speaker. And the defense in fact did account for that possibility, giving the government the benefit of the doubt that the participants in the murders were all together and using Hernandez-Gomez's phone—but that would still mean there would be at least three *other* phones. DE 2541-1 at 15 ("Thus, even speculating that Gomez, Hernandez-Gomez, Portillo, and Chavez had all been together on Hernandez-Gomez's phone, records should show others on the call in addition to Alexi and Jairo Saenz. According to Cooperating Defendant-2, this should have been at least a four-way call."). The government does not counter that fact, choosing instead to just cast aspersions on the integrity of the defense argument.

The government also relies on the recorded conversation between Cooperating Defendant-2 and Gomez. DE 2606 at 37. But that recorded conversation only corroborated that

Gomez and four people not named Jairo Saenz were involved in the murders. DE 2541-3 at 10, ¶ 22. It did not corroborate anything about the supposed call, anything about Jairo Saenz, or anything about J. Saenz Phone #1.

In his motion, Mr. Saenz also argued that because the key corroboration came from tower-dump records that were themselves unlawfully obtained, it cannot be relied on. DE 2541-1 at 17-18. In support of this argument, Mr. Saenz incorporates his separately made arguments on that issue. DE 2540; DE 2616.

In sum, the government has failed to show that the affidavit provided sufficient information to permit the magistrate to make an independent determination of the credibility and reliability of the informants on which probable cause relied. The affidavit thus failed to establish probable cause to support the search of records for J. Saenz Phone #1.

## IV.   THE GOVERNMENT FAILS TO DEFEAT MR. SAENZ'S ARGUMENTS ON OVERBREADTH AND PARTICULARITY.

### A.  Overbreadth

It is telling that the government decides to label warrants commanding production of all cellular records for multiple months as "Cell Site Warrants." *E.g.*, DE 2606 at 4, 19, 23, 48.[7] And the government describes the January 9 warrant as seeking "historical cell-site location information ("CSLI") for six cellular telephone numbers, including the J. Saenz Phones[.]" *Id.* at 4. After all, the warrants sound much more limited and reasonable if all they sought was cell-site location information. The Court must resist this bit of misdirection, because the reality is that the

---

[7] The applications themselves were titled in a similarly misleading way as, "Search Warrant Application for Historical Cell-Site Information." DE 2541-3; DE 2546-1 (sealed).

warrants required the production of far, far more than cell-site information. *See* DE 2541-1 at 2-3; DE 2541-2 at 3-4.

The government argues that the January 9 warrant was not overbroad because the affidavit "set forth the expansive scope of the investigation into the defendant and other MS-13 members, which had revealed that they were involved in a 'series of violent crimes in furtherance of the MS-13 enterprise, including, without limitation,' the Cuevas, Mickens and Stacks murders." DE 2606 at 48-49. But the appropriate breadth of a warrant is not determined by the scope of an *investigation* but rather by what search can be justified by the probable cause established in the affidavit. *See*, *e.g.*, *United States v. Clark*, 638 F.3d 89, 94 (2d Cir. 2011) (overbreadth occurs "where a warrant particularly describes the place to be searched . . . but a question arises as to whether the breadth of that description outruns the probable cause supporting the warrant"). And the relevant inquiry is not whether there was probable cause that Mr. Saenz was involved in crime. The relevant inquiry is whether there was probable cause that evidence of a particular crime would be found in the records for J. Saenz Phone #1. *United States v. Boles*, 914 F.3d 95, 102 (2d Cir. 2019). The Second Circuit "has cautioned against confusing a fair probability that contraband or evidence of a crime will be found in a particular place with probable cause to think that the person whose premises are to be searched is implicated in the crime." *United States v. Lauria*, 70 F.4th 106, 130 n.14 (2d Cir. 2023) (quotations omitted); *see also*, *e.g.*, *United States v. Gomez*, 652 F. Supp. 461, 462 (E.D.N.Y. 1987) ("[I]t cannot follow . . . simply from the existence of probable cause to believe a suspect guilty, that there is also probable cause to search his residence." (quoting *United States v. Valenzuela*, 596 F.2d 824, 828 (9th Cir. 1979))). Contrary to this authority, the government argues that "the nature of the crimes being investigated" opens the floodgates to the broad search that the warrant authorized. DE

2606 at 49. But in the very next sentence, the government admits that the J. Saenz Phone #1 was connected to the alleged racketeering activities only "based on his involvement in the Cuevas and Mickens murders[.]" *Id.* And the evidence linking the J. Saenz Phone #1 to the Cuevas and Mickens murders was a single call on a single day. That could not justify the warrant authorizing a search of a vast variety of records for a two-month time period. *See*, *e.g.*, *United States v. Cerna*, No. CR 08-0730 WHA, 2010 WL 3749449, at *15 (N.D. Cal. Sept. 22, 2010) ("[T]he search warrant was overbroad and insufficiently particular. The warrant only established probable cause for seizure of cell phone records from May 1, 2008, to the end of the search warrant period, but authorized the seizure of cell phone records starting on September 24, 2007."); *id.* at *18 ("The government's post-hoc rationalization that the warrant established sufficient probable cause to investigate a racketeering conspiracy for the entire time period is unavailing. In reviewing a search warrant for probable cause, a court is limited to the information and circumstances contained within the four corners of the underlying affidavit."); *see also USA v. Liang Chen*, No. 17-CR-00603-BLF-1, 2020 WL 6585803, at *8 (N.D. Cal. Nov. 10, 2020) (ruling that warrants were overbroad based on date range, and "the seizures should be authorized beginning on July 20, 2012, not March 2012. . . . [T]he Court will STRIKE the portions of the warrants that authorizes searches and seizures of materials from March 2012 through July 19, 2012 and suppress evidence seized for the time period before July 19, 2012.").

Additionally, the government addresses only the breadth of the time period ordered by the warrant and does not address the breadth of the types of records ordered to be produced. *See* DE 2606 at 48-49. As Mr. Saenz addressed in his motion, at best the affidavit would have justified a warrant for evidence of communications in reasonable temporal proximity to the homicides on September 13, 2016. DE 2541-1 at 20. The affidavit did not justify the scope of the types of

11

records included in the warrant. This case is on par with *United States v. Opoku*, 556 F. Supp. 3d 633, 643 (S.D. Tex. 2021), in which the court ruled that a warrant listing categories of information similar to those here, *see* DE 2541-2 at 3-4, was an "all records" search and was "overbroad, not particular, and in violation of the Fourth Amendment." The court rejected reliance on general statements like those made in the affidavit here:

> The Court does not find the generalization that violent gang members "use their cell phones to communicate with others about the planning and execution of crimes" sufficient to create a nexus with the cellphone's "call history," "emails," "contact information," and "voicemails," but even if it did, the same could not be said for "any photographs or videos," "any internet history," "any recordings," or "any social media posts."

*Id.*

Because the warrant was overbroad, the results must be suppressed.

## B. Particularity

The government argues on the one hand that this was not an "all records" warrant and on the other that it is perfectly fine if it was. DE 2606 at 53. In support of these arguments, the government first asserts that it is "self-evident" that Attachment B to the warrant gave sufficient direction to the executing officers. *Id.* Both of these arguments fail.

The problem with this warrant is not that it included an illustrative list which left some discretion to the executing officers, the situation addressed in *United States v. Riley*, 906 F.2d 841, 843-45 (2d Cir. 1990). Instead, the problem here is that the list included with the warrant is illusory, not illustrative, because it in no way circumscribes a search of the records. By analogy, if a warrant that authorized a search of an entire home were insufficiently particular, the warrant would not become sufficiently particular if it listed the places authorized to be searched as:

- All bedrooms;

- all bathrooms;

12

- all closets;

- all kitchens;

- all family rooms and/or dens;

- all living rooms;

- all office spaces;

- all stairwells;

- all basement spaces;

- all crawl spaces;

- all cabinets;

- all garage spaces.

Such a list would not magically transform a non-particularized warrant into a particularized warrant simply by substituting a list of all locations in the home for the home itself. That is what Attachment B does here. Instead of simply saying "all records" (which it also does), it substitutes a list of all the types of cellular records that could be obtained. *See Opoku*, 556 F. Supp. 3d at 643. This was not an "illustrative list[] [used] as a means of limiting the items to be seized[.]" *United States v. Jacobson*, 4 F. Supp. 3d 515, 524 (E.D.N.Y. 2014). The listing of generic categories covering virtually all the types of data that could be found in cell phone records is not sufficient to meet the Fourth Amendment requirement of particularity. Looking at a warrant for the search of cell phone that was similar in scope, the District of Columbia Court of Appeals held:

> The warrants also lacked particularity, describing the objects of the search in the most general terms imaginable. Rather than specifying the three narrow items of evidence for which the affidavits established probable cause, the warrants broadly authorized the seizure of "any evidence" on the phones and listed, by way of examples, generic categories covering virtually all of the different types of data

13

found on modern cell phones. The warrants imposed no meaningful limitations as to how far back in time police could go or what applications they could review and, instead, endorsed the broadest possible search without regard to the facts of the case or the limited showings of probable cause set forth in the affidavits.

*Burns v. United States*, 235 A.3d 758, 774-75 (D.C. 2020). Here, in failing to impose a reasonable limitation on the time period for the search and in also failing to impose a limitation on the particular files or data that could contain evidence connected to probable cause the affidavit established, the warrant was both overbroad and lacked particularity. As another district court has held:

> The search warrant in this case entirely failed to engage with the court's duty, imposed by the Fourth Amendment, to safeguard the privacy of individuals against the investigative arm of the state. It does not limit the search to the time period in which the offense was allegedly committed. It does not limit the search to any particular files or data that could contain relevant evidence. It does not even limit the search to data capable of being stored on the phone[.]

*United States v. Oglesby*, No. 4:18-CR-0626, 2019 WL 1877228, at *9 (S.D. Tex. Apr. 26, 2019).

The government relies on *United States v. Cioffi*, 668 F. Supp. 2d 385 (E.D.N.Y. 2009),[8] to argue that the "[t]he degree to which a warrant must state its terms with particularity varies inversely with the complexity of the criminal activity investigated." DE 2606 at 26 (quoting *Cioffi*, 668 F. Supp. 2d at 391[9]). The problem for the government is that, as Magistrate Judge Locke previously pointed out, "complexity . . . mean[s] something different than a lot." Tr. 03/18/24, p. 20:9-10. This case is not, as Judge Locke pointed out, a complex financial case. *Id.*, p. 20:10-12. Thus, this case is different than those where complex financial transactions were at

---

[8] *Cioffi* suppressed the results of an overbroad warrant, holding that the good-faith exception did not apply. 668 F. Supp. 2d at 396-97.
[9] This was actually just a parenthetical in *Cioffi* in which the court quoted *United States v. Regan*, 706 F. Supp. 1102, 1113 (S.D.N.Y. 1989).

issue and where a less particular warrant may have been justified. *See Regan*, 706 F.Supp. at 1113 (citing cases).

Because the warrant lacked particularity, the search was unconstitutional, and the results must be suppressed.

## V.    MR. SAENZ IS ENTITLED TO A *FRANKS* HEARING.

### A.   The assertion that J. Saenz Phone #1 was "in the vicinity" of the Cuevas and Mickens murders was deceptive and material.

The government argues that the assertion that records placed Mr. Saenz "in the vicinity of the Cuevas and Mickens murders during the time period surrounding the murders" (DE 2541-3 at 8-9) was neither deceptive nor material because it does not matter if he was at home since the affidavit makes clear that he was not alleged to be present at the scene of the crime. DE 2606 at 40-42. Notably, the government does not dispute that the affiant knew that the records were consistent with Mr. Saenz being at home and that the affiant omitted that fact when asserting that the records placed him in the proximity of the murders.

Also, the government's *Franks* argument is undermined by its probable-cause argument. To counter the materiality of the omission, the government argues essentially that Mr. Saenz could have been anywhere in the world since the theory was that he had aided and abetted the murders through participating in a phone call. But in arguing that the affidavit established probable cause to obtain the records, and in making the related argument that the informant sources (particularly Cooperating Defendant-2) were corroborated, the government stresses that the phone was in proximity to the murders:

- "Furthermore, the affidavit also contained information from cell tower records that placed the MS-13 Member-1 Phone, the Portillo Phone, and J. Saenz Phone-1 in close proximity to where the victims were murdered, and to each other, during the time period surrounding the murders." DE 2606 at 7;

15

- "A review of tower records further established that a [sic] phones belonging to the defendant and Portillo were both in close proximity to murders when they occurred." *Id.* at 17;

- "[T]he cell site data provided extremely probative evidence that established both the defendant's close proximity to the murders (even though the affidavit clearly did not allege that he was a direct participant in or at the scene of the murders when they occurred), and to his fellow co-conspirators when they killed the victims." *Id.* at 35.

The government tries to have its cake and eat it too. The government cannot credibly argue that placing Mr. Saenz in the proximity of the murders strengthens probable cause and corroborates its informants and at the same time argue that the affiant knowing the records suggested he was at his home—rather than, for instance, lurking around the corner from the location of the murders—is not material.

The government additionally argues that if the affiant had included the truthful information that the records indicated Mr. Saenz was at his home, then this would have actually bolstered probable cause because it would have suggested he was at home awaiting the attackers. DE 2606 at 42. Surely if that were so, the affiant would have made that assertion. But tellingly, the affiant included no information about the proximity of the Saenz home to the location of the murders. And the record on which the affiant relied relates only to a time *prior to* the murders, not after.

**B. The assertion that a target of the warrant identified Mr. Saenz as an MS-13 member to his probation officer.**

The government nowhere claims that the MS-13 member ever actually told his probation officer that Jairo Saenz was a member of MS-13. Instead, the government follows the tactic of accusing the accuser by asserting that Mr. Klein's assertion is speculative. DE 2606 at 43-44. The government then goes on to speculate itself about law enforcement officers sharing information without documenting it. *Id.* at 44. If that is what happened, why does the government not just say

16

so? That the government does not simply answer this easily answered question speaks volumes. Of course, the reality is that the target identified only himself as an MS-13 member and not Mr. Saenz. But that is not what the affidavit said.

The government additionally argues that this misstatement was not material because Mr. Saenz's membership in the gang "was established by information from six different informants, all of whom corroborate each other[.]" DE 2606 at 43. The problem is that nothing is known about the credibility and reliability of these informants, how they got their information, or whether they actually *corroborated* each other or simply *collaborated* with each other. With the dearth of information the affidavit provided about these informants, having the purported word of a probation officer that one of their supervisees identified Mr. Saenz as a member of MS-13 is invaluable in establishing that fact for purposes of the affidavit.

Because the information was deliberately misleading and material, a hearing is appropriate.

## VI.  THE GOOD-FAITH EXCEPTION DOES NOT APPLY.

The government also makes a brief argument collectively addressing all three warrants that the Court should apply the good-faith exception to the exclusionary rule. DE 2606 at 67-68.

Where evidence is obtained through an unlawful search, the exclusionary rule requires suppression of the evidence. The exclusionary rule "operates as a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *United States v. Leon*, 468 U.S. 897, 906 (1984) (quotation marks omitted). Thus, where there is a violation of the constitutional prohibition on unreasonable searches, the remedy generally is suppression of the evidence gained through the unlawful search. Under the good-faith exception, evidence seized pursuant to a

search warrant later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable. *Id.* The lynchpin of this analysis is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 923 n. 23. "[T]he Government bears the burden of demonstrating the applicability of the *Leon* good faith exception." *United States v. Robinson*, 336 F.3d 1293, 1297 (11th Cir. 2003).

Because an "officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable," 468 U.S. at 922. the good-faith exception does not apply where the affidavit supporting the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923. An affidavit so lacking in indicia of probable cause that no reasonable officer would rely on the warrant is commonly referred to as a "bare bones" affidavit. *See*, *e.g.*, *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017). "A bare bones affidavit is one that contains wholly conclusory statements, which lack the facts and the circumstances from which a magistrate can independently determine probable cause." *United States v. Johnson*, 4 F. App'x 169, 172 (4th Cir. 2001) (quotation marks omitted). "Put more simply, a bare-bones affidavit is a conclusory affidavit, one that asserts only the affiant's belief that probable cause existed." *White*, 874 F.3d at 496. (quotation marks omitted). Also, a bare bones affidavit is "one in which an affiant merely recites the conclusions of others . . . without corroboration or independent investigation of the facts alleged." *Johnson*, 4 F. App'x at 172; *see also United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996) ("An affidavit that states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge, is a 'bare bones' affidavit.").

18

Here, the affidavit provided a lot of information about various crimes, but it was sorely lacking in providing a sufficient nexus to J. Saenz Phone #1. No reasonable officer could have thought the information provided about J. Saenz Phone #1 would provide a basis to conduct a search for two months of virtually unlimited records for that phone.

Also, in *Leon*, the Supreme Court held that there can be no good-faith reliance on a warrant lacking in particularity. 468 U.S. at 919-23. The *Leon* Court offered examples of when the exception would not apply; one example is when "a warrant may be so facially deficient— i.e., in failing to *particularize* the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." 468 U.S. at 923 (emphasis added). Here, as already described, the warrant lacked particularity, and, therefore, the good-faith exception does not apply.

Last, the good-faith exception does not apply when there has been a *Franks* violation. *Franks*, 438 U.S. at 155-56.

## VII.   CONCLUSION

For the reasons stated in Mr. Saenz's motion, DE 2541, and herein, the Court should suppress the results of the search warrant dated January 9, 2017, and the fruits of any such search.

Respectfully submitted this 28th day of June 2024,

s/Jacqueline K. Walsh
Jacqueline K. Walsh
Washington State Bar #21651
140 Lakeside Ave., #A-338
Seattle, WA 98122
(206) 325-7900
jackie@jamlegal.com

s/Eric K. Klein
Eric K. Klein
Colorado Atty. Reg. #42185
Johnson & Klein, PLLC
5398 Manhattan Circle
Boulder, CO 80303
(303) 444-1885
eklein@johnsonklein.com

Attorneys for Jairo Saenz

/Monica Foster
Monica Foster
Indiana State Bar #8368-49
Executive Director
Indiana Federal Community Defenders, LLC
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
(317) 383-3520
Monica.foster@fd.org

<u>CERTIFICATE OF SERVICE</u>

I certify a copy of the foregoing was filed electronically this 28th day of June 2024.

Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

<u>s/ Monica Foster</u>
Monica Foster